IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


PGT TRUCKING, INC.                )
                                  )
            Plaintiff,            )
                                  )
    v.                            )    Civil Action No. 11-300
                                  )
ROBERT B. LYMAN and LYMAN         )
CONSULTING, LLC,                  )
                                  )
Defendants                        )


REPORT AND RECOMMENDATION

I. Recommendation

Presently before the Court are four motions: Defendant's, Robert Lyman's ("Lyman"), motion to dismiss, or, in the alternative, for a more definite statement (Doc. # 6), Defendant's, Lyman Consulting, LLC's ("LCLLC") motion to dismiss (Doc. # 8), Plaintiff's, PGT Trucking, Inc.'s ("PGT") motion to remand to state court (Doc. # 12) and both Defendants' motion to transfer the case to the District of Arizona (Doc. # 15). As resolution of one dictates resolution of the others, it is recommended that the motions be decided in tandem. And, for the reasons that follow, it is respectfully recommended that the motion for remand be granted, the motion to transfer be denied, and the motions to dismiss be dismissed as moot. It is also

recommended that PGT's request for attorney fees and costs pursuant to 28 U.S.C. § 1447(c) be denied.

II. Report

A. Factual and Procedural History

On August 21, 2006, PGT entered into a Consulting Agreement (the "Agreement") retaining Lyman as an independent contractor for one year to "design, implement and manage a program to obtain work visas' for the successful recruitment and hiring of Mexican Nationals as truck drivers for [PGT] . . . and shall perform such other tasks or projects as he may be assigned by Company Management." Compl., Ex. A. ¶ 1. The Agreement included both non-competition clause and confidentiality clauses. The non-competition provision precluded Lyman from engaging "as a director, officer, employee . . . or in any other capacity, in any business in competition with any business then being conducted by [PGT]." Id. at ¶ 4. The confidentiality clause required Lyman to "hold in a fiduciary capacity for the benefit of [PGT] . . . all secret, confidential or proprietary information, knowledge and data involving [PGT] . . . obtained by [Lyman] during the period of the Agreement." Id. at ¶ 8. This provision also prohibited Lyman from "communicat[ing] or divulg[ing]" such information after the termination of the agreement. Id.

According to the complaint, while Lyman was acting as a consultant for PGT, he introduced PGT to a Mexican carrier, CTI, Inc. ("CTI"). On December 15, 2006, PGT and CTI entered into a Stock Purchase Agreement ("SPA") under which PGT was to acquire an ownership interest in CTI. Shortly thereafter, on January 1, 2007, CTI agreed to pay Lyman for the services he rendered to CTI in connection with negotiation of the SPA between CTI and PGT. Compl., Ex C.

On February 1, 2007, Lyman accepted an offer of employment from PGT. Unbeknownst to PGT, however, on February 12, 2007, Lyman and CTI executed an agreement wherein Lyman was to continue to provide consulting services to CTI in exchange for twenty-five and 83/100 percent (25.83%) of the profits realized from the sale of CTI stock to PGT under the SPA. Compl., Ex. D.

Lyman remained a PGT employee for approximately two more years and held various positions with the company until his resignation on February 18, 2009.

On January 20, 2011, PGT filed an amended complaint against CTI in the United States District Court for the District of Arizona seeking remedies for CTI's alleged breach of the SPA. Lyman and LCLLC are not parties to the Arizona lawsuit.

Subsequently, on February 16, 2011, PGT filed an action against Lyman and LCLCC in the Court of Common Pleas of Beaver

3

County. The complaint alleged that: Lyman and LCLLC breached their fiduciary duty/duty of loyalty by failing to disclose that Lyman, during his tenure as a consultant and/or employee of PGT and in connection with negotiation of the SPA, was also a paid employee and/or consultant of CTI (count one); Lyman and LCLLC breached the non-compete and confidentiality clauses of the Agreement (count two); Lyman and LCLLC fraudulently induced PGT to enter into the SPA with CTI (count three); Lyman and LCLLC intentionally interfered with the contractual relationship between PGT and CTI (count four); and Lyman and LCLLC breached their duty of good faith and fair dealing/unfair competition (count five).

On March 7, 2011, the Lyman defendants filed a Notice of Removal of the action to the District Court for the Western District of Pennsylvania, followed on March 14, 2011, by motions to dismiss the complaint. The next day, PGT filed a motion to remand the matter to state court based upon a forum selection clause included in the Agreement. The motion also requested that attorney fees and costs pursuant to 28 U.S.C. § 1447(c) be assessed against the defendants. The Lyman defendants, in turn, moved to transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). On April 4, 2011, PGT filed a response to the Lyman defendants' motion to dismiss.

B. <u>Discussion</u>

As resolution of the remand motion is dispositive of the other outstanding motions, it will be discussed first.

A defendant may submit affidavits and deposition transcripts in support of a removal petition based on diversity of citizenship jurisdiction. In turn, a plaintiff may offer counter-affidavits and deposition transcripts along with the factual allegations of the complaint in support of remand. The court then evaluates disputed issues of fact in the light most favorable to plaintiff. Munich Welding, Inc. v. Great American Insurance Company, 415 F.Supp.2d 571, 573 (W.D.Pa. 2006).

1. Motion to Remand

PGT's motion for remand is reasoned by the forum selection clause included in the Agreement between Lyman and PGT. That clause provides:

> This Agreement shall be governed by, interpreted, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania. Enforcement of or any legal actions for the breach of this Agreement shall be brought only in the Court of Common Pleas of Beaver County, PA.

Compl., Ex. A. ¶ 10. A district court sitting in diversity must determine the effect to be given a contractual forum selection clause by reference to federal not state law. Jumara v. State Farm Insurance Company, 55 F.3d 873, 877(3d Cir. 1995).

In M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1, 10 (1972), the United States Supreme Court announced a general

5

rule that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." See also In re Exide Technologies, 544 F.3d 196, 218, n.15 (3d Cir. 2008). A party can challenge imposition of the forum selection clause if it can "demonstrate that the contract resulted from fraud or undue influence, or that 'enforcement would contravene a strong public policy of the forum'" where the suit was brought. BbDova, LLC v. Automotive Technologies, Inc., 358 F. Supp. 2d 387, 390 (D.Del. 2005)(quoting Bremen, 407 U.S. at 12).

The Lyman defendants argue against enforcement of the forum selection clause for three reasons – first, the allegations in PGT's complaint do not fall within the scope of claims agreed by the parties to be litigated under the provision; second, the provision clause is not binding on LCLLC; and, third, application of the forum selection clause would be unfair and unreasonable.

a. Applicability of Forum Selection Clause

The scope and applicability of a forum selection clause depends upon the language of the specific provision at issue. John Wyeth & Brother Limited v. Cigna International Corp., 119 F. 3d 1070, 1075 (3d Cir. 1997).

As previously set out, the forum choice provision in the Agreement between Lyman and PGT is narrowly tailored and

6

encompasses "enforcement of or any legal actions for the breach of this Agreement." Unquestionably, then, count two, alleging a purely contractual claim falls within the scope of the provision. What must be decided is whether the forum selection clause applies to PGT's remaining claims.

The Lyman defendants contend to the contrary, arguing that the factual assertions in the complaint do not fall within the scope of matters envisioned by the Agreement, nor are the non-contractual claims related to the subject matter of the Agreement. From the defendants' standpoint, the Agreement was confined to Lyman's recruitment of Mexican truck drivers, while the complaint, with the exception of the breach of contract claim pled in count two, focuses on the formation of the SPA between PGT and CTI, an alleged breach of the SPA, and PGT's attempt to enforce the SPA.

While the defendants accurately describe the focus of the complaint as Lyman's behavior during the negotiation of the SPA, their view that his alleged misdeeds were totally divorced from his obligations pursuant to the Agreement is myopic. First, Lyman's consulting duties under the Agreement were not limited to recruitment of Mexican truck drivers. In addition to the recruitment program, the Agreement also provided that "Consultant . . . shall perform such other tasks or projects as he may be assigned by Company Management." Compl.,

7

Ex A, ¶ 1. As Lyman was ostensibly acting on behalf of PGT in negotiating the SPA with CTI, his activity in this regard can be construed as performance of a task assigned to him by PGT. In addition, by operation of the non-compete clause, Lyman could not engage in any employment activity with a company competing against PGT.[1] Further, under the confidentiality clause, any of PGT's secret, confidential, or proprietary information acquired by Lyman was to be held by him in a fiduciary capacity. This paragraph also prohibited Lyman, during and after termination of the Agreement, from disclosing any such confidential information.

Having determined that Lyman's role in negotiating the SPA falls under the general umbrella of activity covered by the Agreement, the next issue is whether the non-contractual claims are germane to the subject matter of the Agreement and, therefore, subject to litigation pursuant to the forum selection clause.

The Court of Appeals for the Third Circuit's decision in <u>Crescent International v. Avatar Communities, Inc.</u>, 857 F.2d 943 (3d Cir. 1988) is instructive on this question. In <u>Crescent</u>, the Court of Appeals interpreted a forum selection clause in an agreement between Crescent, a Pennsylvania-based

---

[1] The complaint does not allege that PGT and CTI were competitors in the trucking industry; however, their respective interests in negotiating the SPA can be understood as competing.

corporation that sold real estate owned by Avatar, a Florida corporation, in return for commissions. The agreement chose Florida law and provided that "any litigation upon any of [its] terms . . . shall be maintained" in a state or federal court in Miami, Florida. Id. at 944.

Despite the presence of the forum selection provision, Crescent filed an action alleging breach of the contract and related claims based on the Racketeer Influenced and Corrupt Organizations Act, misrepresentations, unfair competition, conversion, fraud and tortious interference with Crescent's business relationships in the United States District Court for the Eastern District of Pennsylvania. The district court granted Avatar's Fed. R. Civ. P 12 (b) (6) motion to dismiss based on the forum selection clause.

On appeal, Crescent argued that the forum selection clause was narrowly drafted and could not apply to the non-contractual claims. The Court of Appeals, however, determined that the pleading of alternate non-contractual theories does not alone invalidate a forum selection clause "if the claims asserted arise out of the contractual relation and implicate the contract's terms." Id. at 945. The appeals court then decided that the district court correctly construed the forum selection provision in the contract, concluding that "[a]lthough only one of Crescent's claims is based on a breach of contract theory,

9

all of them involve allegations arising out of the agreement implicating its terms." Id.

Here, as in Crescent, wherein the contested forum selection clause was limited to "any litigation upon any of [the Crescent/Avatar contract] terms," the subject clause's language is likewise restrictive, applying only to "[e]nforcement of or any legal actions for the breach of this Agreement." Thus, the complaint's allegations are scrutinized to decide whether its non-contractual claims are fairly read as arising from the contractual relationship between the parties and implicate the Agreement's terms.

According to the complaint, during the August 21, 2006 – August 21, 2007 time period covered by the Agreement, Lyman represented PGT in the negotiation of the SPA with CTI.[2] In this same timeframe, Lyman and CTI executed both a promissory note regarding payment for wages due to Lyman per the SPA and an agreement whereby CTI agreed to compensate Lyman for consulting

---

[2] Although Lyman became an employee of PGT on February 1, 2007, prior to the natural expiration of the Agreement, the Agreement was not dissolved pursuant to the terms of paragraph 7 governing its termination. In addition, PGT's letter offering Lyman employment was silent on the continued applicability of the Agreement. Compl., Ex. B. Thus, it is assumed that the terms of the Agreement that were not modified by the offer of employment continued to be in effect until its stated one-year term expired on August 21, 2007.

10

services from a percentage of the profits realized from the sale of CTI stock to PGT under the SPA.

Count one of the complaint asserts that because Lyman was in a position of trust based upon both the Agreement and as an employee of PGT, his failure to disclose that he was simultaneously acting as a paid employee for CTI represented a breach of duty owing to PGT. As count two alleges a breach of contract claim, the applicability of the forum selection clause to this count is obvious. In the count three fraudulent inducement of contract claim, PGT avers that Lyman's breach of his duty to disclose both his employment by CTI during the term of the Agreement and the fact that he stood to benefit financially from execution of the SPA, resulted in PGT entering into the SPA with a price and terms that were unfairly inflated. According to the count four interference with contractual relationship claim, after Lyman resigned from PGT, Lyman advised CTI to breach the SPA with PGT. Finally, count five alleges that Lyman used confidential information he obtained during the period of the Agreement to the benefit of CTI and the detriment of PGT and, therefore, breached his duty of good faith and fair dealing/unfair competition.

Based on the reasoning in Crescent, the claims of breach of fiduciary duty (count one), fraudulent inducement of contract (count three), and breach of duty of fair

11

dealing/unfair competition (count five) can be construed as arising from the contractual relationship between Lyman and PGT and implicate the non-compete and confidentiality paragraphs of the Agreement. Accordingly, these claims will be litigated in accordance with the forum selection provision.

Whether the count four interference with contractual relationship claim can be viewed similarly poses a thornier question since the facts supporting this allegation arose after the termination of the Agreement. Lyman's only obligation to PGT that survived termination of the Agreement was that he continue to abide by the confidentiality clause.

As with the other counts of the complaint, however, count four incorporates by reference all of its earlier recitals, including the assertion that Lyman breached "Paragraph 8 of the Consulting Agreement by revealing certain confidential information to CTI concerning certain confidential information of PGT to CTI, both during the term of the Consulting Agreement, . . . while Lyman was an employee [of PGT], and after Lyman resigned his employment with PGT." Compl. ¶33. At this stage of the litigation, the interference with contractual relationship allegation can fairly be read to have arisen in the context of a breach of Lyman's duty to continue to adhere to the confidentiality clause and, as such, the forum selection clause also applies to this claim.

For these reasons, it is recommended that PGT's motion for remand be granted. PGT, however, has not demonstrated that the defendants lacked an objectively reasonable basis for seeking removal; therefore, it is recommended that its request for attorney's fees and costs under 28 U.S.C. § 1447(c) be denied.

b. <u>Liability of Lyman Consulting, LLC ("LCLCC")</u>

The defendants also argue that the Agreement's forum selection clause cannot constitute a contractual waiver of LCLLC's right of removal because it was not a party to the Agreement nor did the entity even exist when the Agreement was executed. The defendants also observe that, although named in the headings of the complaint, the pleadings do not assert any claims that LCLLC breached the Agreement.

In response, PGT Trucking contends that LCLLC, formed three weeks after the effective date of the Agreement, was merely Lyman's alter ego and, accordingly, the forum selection clause is enforceable against it.

A non-signatory to a contract may be bound by a forum selection clause if that party has "a certain relationship to either the contract containing the forum selection clause or the parties thereto." <u>Hay Acquisition Company, I, Inc. v. Schneider</u> No. Civ.A. 2:04-CV-1236, 2005 WL 1017804, at *8 (E.D.Pa. April 27, 2005).

13

According to the affidavit and exhibits submitted by PGT, Articles of Organization for the Lyman Consulting Company, LLC were filed with the Arizona Corporation Commission on September 11, 2006, approximately three weeks after Lyman and PGT executed the Agreement. The filing, signed by Lyman, identifies Lyman as the sole member, manager, and statutory agent of LCLLC. The place of business of the enterprise is listed as Lyman's residential address.

After Lyman received two payments for services rendered under the Agreement, he directed that further payments should be paid to LCLLC. Payments were made to LCLLC for the next two months. Even after February 1, 2007, when Lyman became a PGT employee, PGT issued two payments to LCLLC for Lyman's performance under the Agreement. LCLLC also received two payments in 2008 for bonuses earned under the Agreement.

Viewing this evidence favorably to PGT, sufficient facts have been alleged demonstrating that LCLLC is closely related to this dispute and it was foreseeable that it would be bound by the forum selection clause. *Cf*. Coastal Steel Corporation v. Tilghman Wheelabrator, Limited, 709 F.2d 190, 203 (3d Cir. 1983)(holding that forum selection clause may be enforced against intended third party beneficiary to contract containing this clause, consistent with the common law of

contracts), overruled on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989).

### c. Enforcement of the Forum Selection Clause

Contractual forum selection clauses are binding on the parties that agree to them. Foster v. Chesapeake Insurance Company, Ltd., 933 F.2d 1207, 1216 (3d Cir.1991). Such provisions are presumptively valid and will be enforced unless the party objecting establishes: (1) it is the result of overreaching; (2) enforcement violates public policy; or (3) enforcement would be unreasonable. QVC. Inc. v. Your Vitamins, Inc., 753 F. Supp. 2d 428 (D. Del. 2010). "A forum selection clause is considered unreasonable where the defendant can make a 'strong showing' either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, or that the clause was procured through 'fraud or overreaching.'" Foster, 933 F.2d at 1219 (quoting Bremen, 407 U.S. at 10, 15).

The Lyman defendants do not argue that the forum selection clause either resulted from overreaching or identify any public policy that its enforcement would violate. Rather, the defendants declare the clause to be unreasonable by reference to their prior positions that the clause is unrelated to a majority of the claims asserted in the complaint and that it does not apply to LCLLC. As both of those arguments have

15

been earlier refuted, the Lyman defendants have failed to demonstrate any of the elements that weigh against enforceability of the forum selection clause.

   2. Motion to Transfer Venue

   A motion to transfer under 28 U.S.C. §1404(a) is applicable when a party seeks to transfer an action from the original federal forum to another federal forum based on a valid forum selection clause. Salovaara v. Jackson National Life Insurance Company, 246 F.3d 289, 297(3d Cir. 2001). "Transfer is not available, however, when a forum selection clause specifies a non-federal forum." Id. at 298.

   Here, the forum selection clause names the Court of Common Pleas of Beaver County as the designated forum for this litigation. Therefore, transfer pursuant to § 1404(a) is inappropriate and it is recommended that the Lyman defendants' motion to transfer venue be denied.

   3. Motions to Dismiss

   Having recommended that this matter be litigated in the Court of Common Pleas of Beaver County, it is also recommended that the Lyman defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) be dismissed as moot.

   III. Conclusion

For the reasons stated, it is respectfully recommended that the motion for remand (Doc. # 12) be granted, the motion to transfer venue (Doc. #15) be denied, and the motions to dismiss (Doc. ## 6,8) be dismissed as moot. It is also recommended that PGT's request for attorney fees and costs pursuant to 28 U.S.C. § 1447(c) be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

Respectfully submitted,

Dated: May 16, 2011

s/Robert C. Mitchell
Robert C. Mitchell
U.S. Magistrate Judge

Count two of the complaint, alleging that Lyman breached the confidentiality and non-compete clauses of the Agreement, falls squarely within the purview of matters subject to litigation in accordance with the forum selection clause. Particularly germane to the present matter is the assertion that